1                                                                'O'

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   SNOW JOE, LLC,                  CV20-00587-RSWL-RAOx

12            Plaintiff,             **ORDER re: Plaintiff's
                                     Motion for Contempt and
13       v.                          Enforcement of Settlement**
                                     [55]
14   LINEMART INC., et al.,

15            Defendants.

16

17

18       Plaintiff Snow Joe, LLC ("Plaintiff") brought the

19   instant Action against Defendants Linemart, Inc.;

20   Linemart NJ, Inc.; Shenzhen Sailvan Network Technology

21   Ltd.; and Shenzhen Sailvan Ecommerce Co., Ltd.

22   (collectively, "Defendants") alleging: (1) direct and

23   contributory false advertising under 15 U.S.C.

24   § 1125(a)(1)(B); and (2) violations of California

25   Business and Professions Codes §§ 17200 and 17500.

26   Currently before the Court is Plaintiff's Motion for

27   Contempt and Enforcement of Settlement [55] ("Motion").

28   Having reviewed all papers submitted pertaining to this

                                1

Motion, the Court **NOW FINDS AND RULES AS FOLLOWS**: the Court **GRANTS IN PART and DENIES IN PART** Plaintiff's Motion.

## I.   BACKGROUND

**A.   <u>Factual Background</u>**

1.   <u>Plaintiff's Underlying Complaint</u>

Plaintiff sells pressure washers online, including through Amazon.com ("Amazon").  Compl. ¶¶ 14-16, 21, ECF No. 1.  Defendants sell electric pressure washers that directly compete with Plaintiff's.  <u>Id.</u> ¶ 22. Plaintiff's Complaint alleged that Defendants falsely advertised their pressure washers' Pounds Per Square Inch ("PSI") pressure ratings and adherence to European Conformity ("CE") safety standards.  <u>Id.</u> ¶¶ 26-28.

2.   <u>Parties' Settlement and Injunction Order</u>

On November 7, 2021, Plaintiff and Defendants entered into a Settlement Agreement (the "Original Agreement"), relating specifically to HOMDOX-branded ("Homdox") pressure washers.  <u>See generally</u> Notice of Settlement of Entire Action, ECF No. 47.  The Original Agreement required Defendants, *inter alia*, to: (1) immediately submit their pressure washers for third-party testing and label them according to the results; (2) identify all their pressure washers, including the model numbers, Amazon Standard Identification Numbers ("ASINs"), and Standard Product Numbers ("SPUs"); and (3) retain a third-party service to monitor and remove inaccurate listings.  Mot. for Contempt Ex. 1 ("Original

Agreement"), ECF No. 55-3.  Pursuant to the Original Agreement, the Court entered a Permanent Injunction Order ("Original Injunction") on November 17, 2021, enjoining Defendants from falsely advertising their pressure washers.[1]  See generally Permanent Inj., ECF No. 49.

On December 20, 2021, Plaintiff notified Defendants of their breach of each provision of the Original Agreement.  Pl.'s Mem. of P. & A. ("Mot.") 3:11-16, ECF No. 55.  The parties then entered into an Amended Settlement Agreement ("Amended Agreement") on February 17, 2022.[2]  Id. at 3:18-22.  Accordingly, on February 18, 2022, the Court entered an Amended Permanent Injunction Order ("Amended Injunction").  See generally Am. Permanent Inj., ECF No. 54.

On February 28, 2022, Plaintiff sent Defendants another notice of breach of the Amended Agreement.[3]

---

[1] The Original Injunction also expressly retained jurisdiction over the matter to enforce the terms of the Original Agreement.  Permanent Inj. 2:25-3:2.

[2] The Amended Agreement expanded the scope of the Original Agreement to include Defendants' MRLIANCE-, SYNCLL-, and TEANDE-branded pressure washers, and it also added a provision allowing for recovery of attorneys' fees for the enforcement of the agreement.  Decl. of Christopher Q. Pham in Supp. of Mot. ("Pham Decl.") Ex. 2 ¶ 5, ECF No. 55-4.  It further provided that any terms in the Original Agreement not modified by the Amended Agreement remain in full force.  Id.

[3] Also on February 28, 2022, Defendants provided Plaintiff with a declaration identifying the model numbers, ASINs, and SPUs for all of Defendants' pressure washers, as well as Defendants' Amazon account names, as required by the Settlement Agreements.  Mot. 4:13-23.  The same day, Defendants submitted five Homdox pressure washers for testing; the testing results were not completed until March 31, 2022.  Id. at 5:5-11.

1  Mot. Ex. 6, ECF No. 55-9.   On March 10, 2022, Plaintiff
2  captured evidence of three Amazon listings for pressure
3  washers under Defendants' accounts advertising false PSI
4  claims.  Mot. 8:7-11. The parties then engaged in meet-
5  and-confer sessions on March 11, March 21, and April 13,
6  2022.  Id. at 4:6-9.  Later, on April 19, 2022,
7  Plaintiff purchased a pressure washer from one of
8  Defendants' confirmed Amazon listings that also
9  contained false PSI claims.  Id. at 9:21-10:28.  The
10 parties then held a fourth meet-and-confer session on
11 April 27, 2022.  Id. at 4:6-9.
12 **B.   Legal Standard**
13     Plaintiff filed the instant Motion [55] on April
14 28, 2022.  Defendants filed their Opposition [56] on May
15 9, 2022, and Plaintiff replied [58] on May 16, 2022.
16                    **II.   DISCUSSION**
17 **A.   Legal Standard**
18     "[C]ourts have inherent power to enforce compliance
19 with their lawful orders through civil contempt."
20 Spallone v. United States, 493 U.S. 265, 276 (1990);
21 Shillitani v. United States, 384 U.S. 364, 370 (1966).
22 Civil contempt consists of a party's disobedience to a
23 specific and definite court order by failure to take all
24 reasonable steps within the party's power to comply.  In
25 re Dual-Deck Video Cassette Recorder Antitrust Litig.,
26 10 F.3d 693, 695 (9th Cir. 1993).  "The moving party has
27 the burden of showing by clear and convincing evidence
28 that the contemnors violated a specific and definite

1   order of the court.  The burden then shifts to the
2   contemnors to demonstrate why they were unable to
3   comply." <u>Stone v. City & County of San Francisco</u>, 968
4   F.2d 850, 856 n.9 (9th Cir. 1992) (citations omitted).
5       A person should not be held in contempt if his
6   action "appears to be based on a good faith and
7   reasonable interpretation of the [court's order]."
8   <u>Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.</u>, 689
9   F.2d 885, 889 (9th Cir. 1982).  Nevertheless, "there is
10  no good faith exception to the requirement of obedience
11  to a court order." <u>In re Dual-Deck</u>, 10 F.3d at 695.
12  "[C]ivil contempt may be established even though the
13  failure to comply with the court order was
14  unintentional." <u>Perry v. O'Donnell</u>, 759 F.2d 702, 705
15  (9th Cir. 1985).  A showing of willfulness is not a
16  necessary element for civil contempt because while the
17  purpose of criminal contempt is punishment, the purpose
18  of civil contempt is remedial.  <u>Id.</u>
19  **B.  <u>Analysis</u>**
20      1.  <u>Evidentiary Objections</u>
21      Plaintiff objects to the Declaration of XiaoShuang
22  Zheng in Opposition to the Motion for Contempt and
23  Enforcement of Settlement ("Zheng Declaration"), along
24  with its accompanying exhibits.  <u>See generally</u> Evid.
25  Objs. to Zheng Decl. and Exs. 1-33, ECF No. 57.  In
26  particular, Plaintiff argues that the declaration should
27  be excluded in its entirety because Zheng was not
28  identified as a potential witness in Defendant's initial

1   disclosures.  Id.  Parties are required to provide in
2   their initial disclosures the names of individuals
3   likely to have discoverable information related to the
4   case.  Fed. R. Civ. P. 26(a).  Failure to do so
5   prohibits the party from using that witness to supply
6   evidence on a motion, except where the failure was
7   substantially justified or harmless.  Fed. R. Civ. P.
8   37(c)(1).  In determining whether to exclude evidence
9   under Rule 37, courts consider factors such as the
10  surprise to the party against whom the evidence would be
11  offered, the ability of that party to cure the surprise,
12  and the importance of the evidence.  Dey, L.P. v. Ivax
13  Pharm., Inc., 233 F.R.D. 567, 571 (C.D. Cal. 2005).
14      Given that the purpose of the Zheng Declaration was
15  limited to providing evidence to rebut a finding of
16  contempt in response to Plaintiff's Motion, the Court
17  finds that Defendants' failure to identify Zheng in its
18  initial disclosures was harmless.  See S.F. Baykeeper v.
19  West Bay Sanitary Dist., 791 F. Supp. 2d 719 (N.D. Cal.
20  2011) (concluding that although plaintiff failed to
21  provide declarants' names in initial disclosures,
22  "[d]efendant cannot say it is surprised that [p]laintiff
23  would submit declarations from its members" establishing
24  standing to bring suit).  Plaintiff's objection on this
25  basis is therefore **OVERRULED**.
26      Plaintiff also objects to the Zheng Declaration and
27  the accompanying exhibits for lack of personal knowledge
28  and on hearsay grounds.  The Court similarly **OVERRULES**

these objections.  Zheng has certified under oath that the emails were sent by employees of Defendants in an effort to comply with the injunction and settlement agreement, and that he has personal knowledge of all facts stated in the Zheng Declaration.  See Zheng Decl. ¶¶ 1, 3, 6.  Moreover, while the emails attached as exhibits contain out-of-court statements, they are not being offered for the truth of the matters stated within the emails.  Rather, they are being offered to show Defendants' attempts to comply with the injunction and why those attempts have been unsuccessful.  See Bates v. Medtronic, Inc., No. EDCV 14-02643-VAP (KKx), 2016 WL 446923, at *8 (C.D. Cal. 2016) ("If an out-of-court statement is not introduced for the truth of the matter asserted, but to establish the effect on the listener or a basis in fact for the listener's subsequent actions, the statement is not hearsay.").

Plaintiff's remaining objections are also **OVERRULED**.  The Court has considered Plaintiff's arguments and relies only on facts it considers to be reliable and admissible.  See F.T.C. v. Data Med. Cap., Inc., No. SA CV 99-1266 AHS (EEx), 2010 WL 1049977, at *28 (C.D. Cal. Jan. 15, 2010).

2.  Local Rule 7-3

Local Rule 7-3 requires that "counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential

resolution." C.D. Cal. L.R. 7-3. The purpose of Local Rule 7-3 is to give all parties a full understanding of the relevant disputes and to allow nonmovants time to evaluate proposed motions and oppose it or reach agreement. Fitzgerald v. City of Los Angeles, 485 F. Supp. 2d 1137, 1140 (C.D. Cal. 2007). Courts have "considerable latitude" in enforcing Local Rule 7-3. Christian v. Mattel, Inc., 286 F.3d 1118, 1129 (9th Cir. 2002). A party's "failure to comply with the Local Rules does not automatically require the denial of a party's motion . . . particularly where the non-moving party has suffered no apparent prejudice." CarMax Auto Superstores Cal. LLC v. Hernandez, 94 F. Supp. 3d 1078, 1088 (C.D. Cal. 2015).

Here, the parties engaged in four meet-and-confer sessions before Plaintiff filed the instant Motion. Mot. 4:6-8. In its Motion, Plaintiff plainly stated that these four meetings had occurred pursuant to Local Rule 7-3. Id. at 2:18-19. Defendants argue that these meetings were insufficient because Plaintiff did not mention Defendant's alleged mislabeling of products during the meetings, including its mislabeling of the product that Plaintiff purchased as evidence in support of the Motion. Opp'n 5:4-7, ECF No. 56.

Despite Defendants' contentions to the contrary, Plaintiff's counsel satisfied the requirements of Local Rule 7-3. Plaintiff made numerous attempts to inform Defendants of their violations during the meet-and-

confer sessions.  Reply in Supp. of Mot. ("Reply") 4:2-
8, ECF No. 58; see also Mot. 3:11-17, 4:2-6.  Moreover,
Defendants were clearly on notice of the present Motion
and were able to timely file an Opposition.  Thus, any
prejudice to Defendant from a potential defect in the
meetings is minimal.  See Fitzgerald, F. Supp. 2d at
1140 (finding that nonmovants suffered no prejudice
because they had adequate time to respond to the
motion).

    3.  Defendants Is in Contempt of Court Orders

    To establish that Defendants should be held in
civil contempt here, Plaintiff first must demonstrate by
clear and convincing evidence that Defendants violated a
court order "beyond substantial compliance, and that the
violation was not based on a good faith and reasonable
interpretation of the [order]."  Wolfard Glassblowing
Co. v. Vanbragt, 118 F.3d 1320, 1322 (9th Cir. 1997).
If Plaintiff meets this burden, the burden then shifts
to Defendants to show that they "took every reasonable
step to comply."  Stone, 968 F.2d at 856 n.9.  For the
reasons set forth below, the Court holds Defendants in
civil contempt and **GRANTS in part and DENIES in part**
Plaintiff's Motion.

        a.  Defendants Violated the Amended Injunction
            and Settlement Agreements

    Where a party is enjoined from falsely representing
a products' adherence to certain testing standards, the
party's disregard for the testing standards can support

1  a finding of contempt.  See <u>Gen. Signal Corp. v.</u>
2  <u>Donallco, Inc.</u>, 787 F.2d 1376, 1379 (9th Cir. 1986).
3  Even where a defendant's violative labeling occurs by
4  mistake, courts have found contempt where a reasonable
5  inspection should have revealed the misrepresentation.
6  <u>Id.</u>

7      Here, Plaintiff has demonstrated by clear and
8  convincing evidence that Defendants have repeatedly
9  violated the Amended Injunction.  The Amended Injunction
10  prohibited Defendants from misrepresenting their
11  pressure washers' PSI capabilities and CE compliance,
12  and Plaintiff provided evidence of Defendants' Amazon
13  listings containing false PSI claims.  <u>See</u> Decl. of Lee
14  Ann Sowers in Supp. of Mot. ("Sowers Decl.") Exs. 7-9,
15  ECF Nos. 55-11, 55-12, 55-13.  The pressure washer
16  Plaintiff purchased from Defendants also included
17  contradicting PSI claims between the product label,
18  instruction manual, and advertisement for the product.
19  <u>See</u> Sowers Decl. Exs. 10-12, ECF Nos. 55-14, 55-15, 55-
20  16.  Moreover, all three of these PSI claims were
21  inaccurate based on the third-party test results.[4]  <u>Id.</u>

22      Additionally, Plaintiff has shown that Defendants
23  are in violation of paragraphs 3.a., 3.c., and 3.e. of
24  the Settlement Agreements, which further supports a

25  _____

26      [4] Defendants attack Plaintiff's evidentiary purchase by
    claiming the pressure washer may not have been sold by
27  Defendants.  <u>Id.</u> at 6:7-8.  However, Defendants themselves
    confirmed that the account, ASIN, and model number associated
    with the purchased product belonged to Defendants.  Pham Decl.
28  Ex. 3, ECF No. 55-5.

finding of contempt.[5]  Paragraph 3.a. of the Original
Agreement required Defendants to immediately submit all
their Homdox power washers for third-party testing.  See
Original Agreement ¶ 3.a.  The Amended Agreement
expanded this provision to include Defendants' MRLIANCE,
SUYNCLL, and TEANDE pressure washer brands.  See Amended
Agreement ¶ 3.  However, Defendants have not submitted
any MRLIANCE-, SUYNCLL-, or TEANDE-branded models for
testing.  Reply 7:14-18, ECF No. 58.  Defendants only
submitted five models of Homdox pressure washers for
testing and did so eleven days late.  Pham Decl. Exs. 3-
4, ECF Nos. 55-5, 55-6.

    Defendants also breached paragraph 3.c. of the
Original Agreement, which requires Defendants to base
all PSI claims on the testing results found in paragraph
3.a.  See Pham Decl. Ex. 1.  Because Defendants did not
submit the majority of their electric pressure washers
for testing, there is no basis upon which Defendants
could make any accurate PSI claims in their product
labeling.  Even considering the five Homdox models that
Defendants did submit for testing, at least one model

---

[5] The Settlement Agreements spell out clear procedures to
ensure Defendants' compliance with the Amended Injunction.
Further, the Court expressly retained jurisdiction to enforce the
terms of the Settlement Agreements.  Am. Permanent Inj. 2:25-28;
Flanagan v. Arnaiz, 143 F.3d 540, 544 (9th Cir. 1998).  Thus,
violations of the Settlement Agreements may constitute
independent grounds for contempt.  See Plummer v. Chem. Bank, 668
F.2d 654, 659 (2d Cir. 1982) (holding that provisions of a
settlement operate as an injunction); see also Buckhannon Board &
Care Home v. W. Va. Dep't of Health and Human Res., 532 U.S. 598,
604 (2001) (noting that a settlement functions as a court order).

1    contained false PSI claims.  Mot. 7:16-28.

2         Moreover, Paragraph 3.e. of the Original Agreement

3    obligates Defendants to retain a third-party monitoring

4    service to monitor the online listings of Defendants'

5    electric pressure washers.  Pham Decl. Ex. 1 ¶ 3.e.

6    Defendants agreed to authorize the third-party

7    monitoring service to remove listings containing false

8    or unverified PSI ratings.[6]  However, in the seven

9    months since the parties entered the Original Agreement,

10   Defendants have not provided any proof that they

11   retained a third-party monitor.  Had they done so,

12   Defendants likely could have discovered and removed the

13   false, unverified, or inconsistent PSI claims of which

14   Defendants claim they were unaware.  Since a third-party

15   monitor could have discovered Defendants' false

16   advertisements, Defendants' failure to modify or remove

17   their Amazon listings is contemptuous.  See Gen. Signal

18   Corp., 787 F.2d at 1379.

19   ///

20

21        [6] Defendants blame their failure to retain a third-party
     monitor on the fact that they discussed an alternative solution
22   to this requirement with Plaintiff's counsel.  Opp'n 7:23-28.
     However, the Settlement Agreements include an integration clause
23   and state that any amendment or modification to the Settlement
     Agreements must be written and signed to be binding.  Ex. 1 ¶ 10,
24   ECF No. 55-3; Ex. 2 ¶ 11, ECF No. 55-4.  Regardless of any
     discussion between the parties, no signed writing exists to
25   modify the third-party monitor requirement.  The parties must
     therefore be held to the terms of the written and signed Amended
26   Agreement.  See Cal. Civ. Code § 1698(c) ("Unless the contract
     otherwise expressly provides, a contract in writing may be
27   modified by an oral agreement supported by new consideration.")
     (emphasis added).
28

1    Defendants have repeatedly failed to satisfy their
2    obligations under both the Amended Injunction and the
3    Settlement Agreements.  Therefore, the Court finds that
4    Defendants have violated court orders beyond substantial
5    compliance.

6        b.    Defendants Did Not Take Reasonable Steps to
7              Comply

8    To defend against Plaintiff's prima facie showing
9    of contempt, Defendants must demonstrate that they took
10   "all reasonable steps" to substantially comply with the
11   order but compliance was nevertheless impossible.  Gen.
12   Signal Corp., 787 F.2d at 1379 (quoting Vertex Distrib.
13   V. Falcon Foam Plastics, Inc., 689 F.2d 891–92).  "If a
14   violating party has taken all reasonable steps to comply
15   with the court order, technical or inadvertent
16   violations of the order will not support a finding of
17   civil contempt."  Id. (internal quotation marks and
18   citations omitted).

19   Defendants have not put forth sufficient evidence
20   of its attempts to substantially comply with the Amended
21   Injunction or the Settlement Agreements.  Defendants'
22   emails to Amazon do not demonstrate substantial
23   compliance because the email exchanges took place after
24   Defendants had already been in violation of the Original
25   Agreement for months, and most emails were sent after
26   the filing of this Motion.  See Zheng Decl. Exs. 1-33,
27   ECF Nos. 56-2, 56-3, 56-4, 56-5, 56-6.  Other than these
28   untimely emails, Defendants provide no evidence of

13

affirmative steps taken to comply with the Amended
Injunction or Settlement Agreements.  Cf. Harbor Breeze
Corp. v. Newport Landing Sportfishing, Inc., No.
SACV1701613CJCDFMX, 2020 WL 816135, at *1 (C.D. Cal.
Jan. 23, 2020) (declining to hold defendants in contempt
where defendants took affirmative steps to comply, and
defendants' only violation was a technical error).

Nor have Defendants shown that compliance with the
Amended Injunction was impossible.  Amazon never took
more than one day to respond to Defendants' inquiries,
despite Defendants' claim that in some instances Amazon
would "state for days or weeks" that requested changes
were in process.  Opp'n at 7:2-4; Zheng Decl. Exs. 1-33.
Defendants also allude to Amazon's "web crawling"
algorithm, which allegedly causes listings "to revert
back to the old unchanged content."  Opp'n 6:4-7.
However, no evidence indicates that this so-called "web
crawling" algorithm actually affected Defendants'
listings, nor that Defendants were unable to simply
remove the listings altogether.  Further, the changes
Defendants requested from Amazon still included PSI
claims that were all either unsubstantiated or higher
than the tested 1300 PSI rating.  By requesting
modifications that still included false PSI claims,
Defendants have not only failed to show a reasonable
effort to comply with the Amended Injunction but have
also actively continued to violate it.

Defendants additionally claim to have experienced

challenges with employees due to COVID-19 lockdowns, but
Defendants do not indicate that these lockdowns made
compliance impossible.  Opp'n 6:12-24.  For instance,
Defendants do not argue that the lockdowns prevented
their employees from accessing the internet, nor that
the lockdowns prevented Defendants from manufacturing
and selling their pressure washers in a manner that
complies with the Amended Injunction.  Id.  Thus, while
Defendants may have experienced challenges due to COVID-
19, these challenges do not excuse their non-compliance.
See F.T.C. v. Affordable Media, 179 F.3d 228, 1241 (9th
Cir. 1999) ("[T]he party asserting the impossibility
defense must show categorically and in detail why he is
unable to comply.").

While Defendants contend that they "have been as
diligent as possible in attempting to comply," Opp'n at
6:12-14, conclusory statements about diligence alone do
not excuse their violations.  Plaintiff has demonstrated
clear violations of the both the Amended Injunction and
the Settlement Agreements, and Defendants have failed to
meet their burden to show that they took all reasonable
steps to comply.  This Court therefore holds Defendants
in contempt and **ORDERS** Defendants to comply with the
terms of the Amended Injunction and the Settlement
Agreements, namely paragraphs 3.a., 3.c., and 3.e.

4.  Coercive and Compensatory Sanctions

Plaintiff's Motion seeks sanctions against
Defendants to coerce their obedience and to compensate

1  Plaintiff for damages resulting from Defendants'
2  behavior.  Mot. 2:4-10.  As for compensatory sanctions,
3  Plaintiff asks this Court to order Defendants to pay to
4  Plaintiff all profits received by Defendants from the
5  sale of their pressure washers in violation of the
6  Amended Injunction.  Id. at 17:11-13.
7      "A court may wield its civil contempt powers for
8  two separate and independent purposes: (1) 'to coerce
9  the defendant into compliance with the court's order';
10  and (2) 'to compensate the complainant for losses
11  sustained.'"  Shell Offshore Inc. v. Greenpeace, Inc.,
12  815 F.3d 623, 629 (9th Cir. 2016) (quoting United States
13  v. United Mine Workers of Am., 330 U.S. 258, 303-04
14  (1947)).
15      When imposing coercive sanctions, courts must
16  "consider the character and magnitude of the harm
17  threatened by continued contumacy, and the probable
18  effectiveness of any suggested sanction in bringing
19  about the result desired."  United Mine Workers, 330
20  U.S. at 304.  Coercive fines are payable to the court,
21  rather than the movant.  Id.  Coercive sanctions often
22  take the form of a conditional daily fine.  Shell
23  Offshore, 815 F.3d at 629; see, e.g., Whittaker Corp. v.
24  Execuair Corp., 953 F.2d 510, 617 (9th Cir. 1992)
25  (noting that coercive sanctions "are by their very
26  nature 'conditional' because they only operate if and
27  when the contumacy continues").  While courts may
28  exercise discretion in fashioning an amount of fines,

see <u>United Mine Workers</u>, 330 U.S. at 305, the conditional fine should afford the contemnor an opportunity to purge the fine by complying with the court order.  <u>Shell Offshore</u>, 815 F.3d at 629.  In determining the amount of the fine, courts should also "consider the amount of [the contemnor's] financial resources and the consequent seriousness of the burden" to the contemnor.  <u>United Mine Workers</u>, 330 U.S. at 304.

Here, Defendants' continued contumacy poses an ongoing threat to Plaintiff as a direct competitor. Seven months have passed since the Original Agreement and Permanent Injunction were entered, and four months have passed since the Amended Agreement and Amended Injunction were entered.  Defendants' contumacy has continued through this entire period.  <u>See</u> Mot. 1:3-10.

While Plaintiff has not suggested an amount of coercive sanctions to impose, a conditional daily fine in the amount of $250 per day is appropriate here for three reasons.  First, a conditional daily fine would likely induce Defendants' compliance with the Amended Injunction and the Settlement Agreements, given their failure to comply in the absence of a coercive sanction. Second, a conditional daily fine would provide Defendants an opportunity to purge the fine by ceasing their contemptuous conduct.  <u>See</u> <u>Shell Offshore</u>, 815 F.3d at 629.  Third, the amount of $250 per day is warranted given the lack of information about Defendants' financial resources and given the

substantial magnitude of Defendants' continued contumacy.  Arabian Gas & Oil Dev. Co. v. Wisdom Marines Lines, S.A., No. 16-CV-03801-DMR, 2017 WL 4390184, at *7 (N.D. Cal. Oct. 3, 2017) (noting that a $250 per diem fine was "well within the range of coercive per diem fines issued by courts in this district for civil contempt"); United States v. Gillies, No. CV-11-3623 CW MEJ, 2013 WL 968244, at *2 (N.D. Cal. Feb. 22, 2013), report and recommendation adopted, No. C 11-03623 CW, 2013 WL 968231 (N.D. Cal. Mar. 12, 2013) (imposing a coercive daily fine of $250 against an individual). Thus, this Court **GRANTS** Plaintiff's request for coercive sanctions and **ORDERS** Defendants to pay a daily fine of $250, starting from the date of this Order, for each day they remain in violation of the Amended Injunction and the Settlement Agreements.

Unlike coercive sanctions, compensatory awards are limited to "actual losses sustained as a result of the contumacy." Shuffler v. Heritage Bank, 720 F.2d 1141, 1148 (9th Cir. 1983).  Compensatory awards are payable to the party moving for contempt. United Mine Workers, 330 U.S. at 304.  Here, Plaintiff has failed to provide the Court with evidence as to sales it actually lost as a direct result of Defendants' contumacy.  See United Mine Workers, 330 U.S. at 304 (compensatory fine must "be based upon evidence of complainant's actual loss"); see also Gen. Signal Corp., 787 F.2d at 1380 (denying a compensatory fine where movant provided no evidence of

losses caused by non-movant's contumacy).  Lacking
evidence of losses attributable to Defendants'
contumacy, this Courts **DENIES** Plaintiff's request for
compensatory sanctions.

    5.  <u>Attorneys' Fees</u>

    In addition to sanctions, Plaintiff seeks
attorneys' fees and costs in the amount of $12,192.25
incurred in connection with bringing the instant Motion
and enforcing the Settlement Agreements.  Mot. 17:14-16,
18:1-3.  The Amended Agreement provides in Paragraph 5
that, in the event that either party breaches the
Settlement Agreements, the accused party "shall pay all
reasonable attorneys' fees, costs and expenses incurred
by the prevailing Party in any civil action relating to
the enforcement of the Original Agreement, the Amended
Agreement, [and] the Amended Permanent Injunction."  Ex.
2 ¶ 5.

    Courts have considerable discretion to award
attorneys' fees.  <u>Fitzgerald v. City of Los Angeles</u>,
No. CV 03-01876 DDP (RZx), 2009 WL 960825, at *3 (C.D.
Cal. April 7, 2009).  Courts have awarded attorneys'
fees based on the terms of a settlement agreement where
an unambiguous provision in the settlement agreement
provided payment of attorneys' fees and costs,
especially where it was likely that an agreement or
injunction "w[ould] need monitoring."  <u>Id.</u> at *6.
Additionally, because "[a]ttorneys' fees frequently must
be expended to bring a violation of an order to the

court's attention," courts in civil contempt proceedings may exercise discretion to decide whether an award of attorneys' fees is "appropriate as a remedial measure." <u>Perry</u>, 759 F.2d at 705.

Here, Plaintiff is entitled to attorneys' fees under the express terms of the Settlement Agreements. However, Plaintiff has not submitted financial records, such as billing statements, to establish the amount of reasonable attorneys' fees and costs beyond its bald assertion that it incurred costs of $12,192.25 in bringing this Motion.  <u>See</u> <u>Global Ampersand, LLC v. Crown Eng'g & Constr.</u>, 261 F.R.D. 495, 502 (E.D. Cal. 2009) (citing <u>Van Gerwen v. Guarantee Mut. Life Co.</u>, 214 F.3d 1041, 1045 (9th Cir. 2000)) (holding that a party seeking an award of attorney's fees "must submit evidence to support the number of hours worked and the rates claimed").  Thus, the Court **GRANTS** Plaintiff's request for attorneys' fees and **ORDERS** Plaintiff to provide supplemental briefing to establish the amount of reasonable attorneys' fees and costs.

### III.   CONCLUSION

Based on the foregoing, the Court **GRANTS in part and DENIES in part** Plaintiff's Motion for Contempt and Enforcement of Settlement.  Specifically, the Court **ORDERS** Defendants to comply with the Amended Injunction and the Settlement Agreements and cease their use of false or unverified PSI claims.  The Court also **GRANTS** Plaintiff's request for coercive sanctions and **ORDERS**

1    Defendants to pay a daily fine of $250, starting from
2    the date of this Order, for each day they remain in
3    violation of the Amended Injunction and the Settlement
4    Agreements.  The Court **DENIES** Plaintiff's request for
5    compensatory sanctions.  The Court additionally **GRANTS**
6    Plaintiff's request for attorneys' fees and **ORDERS**
7    Plaintiff to submit supplemental briefing to establish
8    the amount of reasonable attorneys' fees and costs
9    within fourteen (14) days of this Order.
10       **IT IS SO ORDERED.**

11

12   DATED: July 18, 2022            /s/ Ronald S.W. Lew
                                 _____
13                               **HONORABLE RONALD S.W. LEW**
                                 Senior U.S. District Judge
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28